FILED

2014 Mar-27  AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PEARLIE ROBINSON | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CASE NO. 2:12-cv-2159-SLB** |
| | ) | |
| AFFIRMATIVE INSURANCE, | ) | |
| HOLDINGS, INC.; AFFIRMATIVE | ) | |
| INSURANCE COMPANY; | ) | |
| USAGENCIES MANAGEMENT | ) | |
| SERVICES, INC.; LIFCO, LLC. | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This case is presently before the court on defendants' Motion to Dismiss, (doc. 19).[1]

Upon consideration of the motion, the supporting and opposing memoranda, arguments of

counsel and the relevant law, the court finds, for the reasons stated below, that defendants'

Motion to Dismiss is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

A complaint is required to contain a "short and plain statement of the claim showing

that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When a plaintiff alleges fraud

or mistake, the complaint must "state with particularity the circumstances constituting fraud

---

[1] Reference to a document number, ("Doc. ___"), references to the number assigned each
document as it is filed in the court's record.

or mistake." FED. R. CIV. P. 9(b). A defendant may move to dismiss a complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon

which relief may be granted. To survive a 12(b)(6) motion, the complaint "does not need

detailed factual allegations"; however, the "plaintiff's obligation to provide the grounds of

his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (internal quotation marks and citations omitted).[2] Accordingly, "[f]actual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*.

(citations and footnote omitted). The plaintiff need not prove his case, but must plead

"enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis

added). Additionally, "[w]hen considering a motion to dismiss, all facts set forth in the

plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the

pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank*, *N.A.*, 225 F.3d 1228,

1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir.

---

[2] In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," which was set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *See Twombly,* 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562-63. The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

1993)). Further, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, "'[u]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). Therefore, though the court must accept all factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

## II. FACTUAL AND PROCEDURAL BACKGROUND

While visiting a USAgencies retail office around July 28, 2009, plaintiff obtained insurance coverage through defendants for her 2008 Kia Spectra. (Doc. 18 ¶ 33.)[3] Plaintiff alleges that the agent at the retail office made various representations about the insurance agreement and plaintiff relied on these representations in entering a "premium finance agreement." (*Id.* ¶ 34-37). Plaintiff's insurance policy, issued by Affirmative Insurance Company ("AIC"), provided for "full coverage" for loss and damage resulting from "theft, fire, larceny, malicious mischief and/or vandalism." (*Id.* ¶¶ 8-9.)

On the evening of January 27, 2010, plaintiff's 2008 Kia Spectra was parked outside of her home when she went to bed. (*Id.* ¶ 10.) The following morning, plaintiff discovered that her vehicle was missing. (*Id.* ¶ 10.) Plaintiff reported the incident to law enforcement authorities as a "theft." (*Id.* ¶ 11.) Authorities eventually located and recovered the missing

---

[3]Document 18 is plaintiff's Amended Complaint.

vehicle, but the vehicle had sustained damage that had not existed prior to being stolen. (*Id*. ¶ 12.) Plaintiff notified defendants AIC and USAgencies Management Services ("USAMS") of the damage and submitted a claim for insurance benefits and indemnity. (*Id*. ¶ 14.) During the course of defendants' investigation into the claim, defendants suggested that the evidence they had obtained demonstrated that plaintiff had been involved in the damage to the vehicle and that, unless she dropped her claim, they would turn their investigation results over to law enforcement, who would charge her with arson and/or insurance fraud. (*Id*. ¶ 26-27.) Defendants continued to accept monthly "premium payments" on plaintiff's insurance policy during the investigation. (*Id*. ¶ 41.) Defendants denied plaintiff's claim on April 29, 2010, concluding that the damage to plaintiff's vehicle did not fall within the Policy's definition of "loss." (*Id*. ¶ 17.) The insurance policy defined "loss" as a "direct, sudden and accidental loss or damage." (*Id*.)

On April 24, 2012, plaintiff filed suit in the Circuit Court of Jefferson County against defendants AIC, Affirmative Insurance Holdings, Inc., USAMS, and LIFCO, LLC (collectively, "defendants"). (*See* doc. 1-1 at 4.) After removal, plaintiff filed an Amended Complaint on April 26, 2013. (Doc. 18). On May 10, 2013, defendants filed a Motion to Dismiss Counts IV-VII of plaintiff's Amended Complaint ((IV) intentional infliction of emotional distress, (V) misrepresentation and suppression, (VI) negligent hiring, training and

supervision, and (VII) invasion of privacy, false light, and infliction of emotional distress).[4]

(Doc. 19.) The court will address each count in turn.

### III. DISCUSSION

#### I. Count IV: Intentional Infliction of Emotional Distress

Defendants argue that the conduct alleged by plaintiff does not rise to the level of outrage as recognized in Alabama case law. (Doc. 19-1 at 8-12). They cite *Moore v. Beneficial Nat'l Bank USA*, 876 F. Supp. 1247, 1261 (M.D. Ala. 1995), in which the court noted that in Alabama, the tort of outrageous conduct is limited to "discernable fact patterns" including "wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means in attempting to coerce an insured into settling an insurance claim; and cases involving egregious sexual harassment." Defendants note that in *Nat'l Sec. Fire & Casualty Co. v. Bowen*, 447 So. 2d 133, 136-37 (Ala. 1983), in which the court affirmed a verdict for the plaintiff for outrageous conduct, the insurance investigators: (1) took the plaintiff out into the woods, held a gun to his head, and threatened to kill him, (2) told the plaintiff he would look good next to his dead brother, (3) threatened to kill the plaintiff's two small sons, (4) bribed witnesses, and (5) obtained an indictment against the plaintiff for arson and false pretenses based upon false evidence. (Doc. 19-1 at 12.) Nothing as bad happened here, defendants argue—even if they had threatened to turn the investigation

---

[4] Defendants also filed an earlier motion to dismiss plaintiff's original Complaint, but it was rendered moot after the court granted plaintiff's Motion for Leave to Amend the Complaint. (*See* docs. 3, 16, 17.)

over to the authorities, it would be insufficient to substantiate the tort of outrage. (*Id.*); *see also American Road Serv. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980) (holding that the tort of outrage does not recognize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities).

Plaintiff responds that defendants are asking the court to "pre-judge" whether their agents' actions rose to the level of outrage. (Doc. 21 ¶ 7.) Plaintiff argues that a determination of her claim is inappropriate until either more evidence is submitted or a jury decides the matter. (*Id.* ¶¶ 8-9.) Plaintiff reiterates that defendants used their investigation of her claim as a pretext to interrogate her, misrepresented that they had acquired evidence that tended to prove her "criminal misconduct," and threatened to inform police unless she withdrew her claim. (*Id.* ¶ 10.)

The elements for intentional infliction of emotional distress are: "(1) defendant's conduct was intentional and reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Little v Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011) (internal quotation marks and citations omitted). "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So. 2d at 365.

Contrary to plaintiff's characterization, defendants' argument does not request a judgment as to whether their conduct was actionably outrageous. It points out that the facts currently alleged, taken as true, do not state a claim for relief. In other words, plaintiff does

not need more evidence—indeed, plaintiff needs no evidence at this time; she needs more serious factual allegations. Plaintiff's claim for intentional infliction of emotional distress is thus due to be dismissed. The court will grant leave, however, for plaintiff to amend her complaint.

### II. Count V: Misrepresentation and Suppression

Count V consists of two distinct claims: fraudulent inducement and fraudulent investigation. Defendants argue that plaintiff's claim for fraudulent inducement is barred by the two-year statute of limitation for fraud claims because it begins to run when the plaintiff discovers or should have discovered the fraud. (Doc. 19-1 at 13); *see* Ala. Code § 6-2-3 (1975). They argue that plaintiff knew facts that would have put a reasonable person on notice of an alleged fraud when she purchased her insurance policy on July 28, 2009. (Doc. 19-1 at 15-16.) What were those facts? Apparently they were in the "premium finance agreement" itself. (*Id.* at 14-16.) Plaintiff had a duty to read and inspect any document that might affect her legal rights or liabilities, and had she done so, defendants argue, she reasonably should have discovered the fraud. (*Id.*); *see Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

True, "the question of when a plaintiff should have discovered the fraud may be removed from the purview of the jury and decided as a matter of law when the plaintiff received documents in connection with the transaction that should have alerted him to the possibility of fraud." *Sirmon v. Wyndham Vacation Resorts, Inc.*, 922 F. Supp. 2d 1261, 1272 (N.D. Ala. 2013) (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997)). But

not yet. The court does not have the premium finance agreement before it; as such, there is

no way to determine whether its terms "should have alerted [her] to the possibility of fraud."

*Sirmon*, 922 F. Supp. 2d at 1272; *see also Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688,

693 (Miss. 2009) ("[I]f the plain language of the policy does not clearly contradict the

agent's representations such that the insured is put on notice, a fraud claim accrues when the

insured becomes aware of the misrepresentation."). Because all reasonable inferences must

be drawn in favor of the plaintiff, *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th

Cir. 2002), the court cannot simply take defendants' word for it that the premium finance

agreement "*clearly contradicts* the alleged misrepresentations" and so would have put

plaintiff on notice of the fraud immediately upon signing the agreement, (doc. 22 at 5 ¶ 20)

(emphasis added). Therefore, defendants Motion to Dismiss the fraudulent inducement claim

is due to be denied.

As for the fraudulent investigation claim, defendants argue that plaintiff does not

allege detrimental reliance on representations made during the claims investigation, (doc. 19-

1 at 16), nor did she plead the circumstances of the fraud with sufficient particularity, (*id*. at

18). Plaintiff responds that, assuming defendants made the intentional misrepresentations

alleged in the Amended Complaint, there can be no doubt that they intended her to rely on

their misrepresentations. (Doc. 21 ¶¶ 20-21.)

A complaint satisfies Rule 9(b) when it sets forth:

(1) precisely what statements were made in what documents or oral
representations or what omissions were made, and (2) the time and place of
each such statement and the person responsible for making (or in the case of

omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Plaintiff alleges that defendants already knew her car was totaled from their investigation, but told her that they had not reached a conclusion on the matter and needed more information, all the while continuing to accept her monthly premium payments. (Doc. 18 ¶¶ 106, 108.) But plaintiff does not give specifics about the parties' communications: who made the representations, and how. As such, plaintiff's fraudulent investigation claim is due to be dismissed. The court will grant leave, however, for plaintiff to amend her complaint to add the necessary facts.

### III. Count VI: Negligent Hiring, Training, and Supervision

Defendants argue two points with regard to Count VI. First, they argue that an allegation that they were negligent in hiring, training, or supervision is inconsistent with an allegation of intentional bad faith: if they intentionally trained personnel to perform sham investigations, then they were not being negligent in training—they were being intentional. (*Id.* at 20-21.) Delving into the merit of that argument is unnecessary, because the Rules specifically allow such inconsistencies in pleadings. *See* FED. R. CIV. P. 8(d)(2)-(3).

Second, defendants argue that plaintiff's generalized allegations make it impossible to know what she is alleging. (Doc. 19-1 at 20.) Defendants point out that plaintiff never specifies which employees were negligent; what they did or did not do; or how they were improperly supervised. (*Id.*) Accordingly, defendants argue that plaintiff has not met the

minimum pleading standards for Rule 8 for Count VI. Plaintiff does not respond to this

argument. (*See* doc. 21 ¶ 23.)

A negligent hiring, training, and supervision claim is essentially the same as a regular

negligence claim, with the requirement that the principal or master was aware of the agent's

actions. The Alabama Supreme Court has said:

> In the master and servant relationship, the master is held responsible
> for his servant's incompetency when notice or knowledge, either
> actual or presumed, of such unfitness has been brought to him.
> Liability depends upon its being established by affirmative proof
> that such incompetency was actually known by the master or that,
> had he exercised due and proper diligence, he would have learned
> that which would charge him in the law with such knowledge. It is
> incumbent on the party charging negligence to show it by proper
> evidence.

*Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970). Perhaps more pertinent to the

plaintiff's allegations,

> in order to establish that the employee is incompetent, a plaintiff
> must allege prior similar acts of wrongdoing sufficient to establish
> that the employer knew or should have known that the employee,
> due to his incompetency, was prone to such wrongdoing. A
> conclusory allegation of negligent hiring, training, or
> supervision—without any accompanying facts that there was a
> pattern of abuse or that [defendants] w[ere] otherwise on notice of
> propensities of its employees to engage in tortious behavior toward
> [others] . . . , much less that [defendants] failed to take corrective
> action—is not sufficient to buoy such a claim through the pleadings
> stage.

*Agee v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:12-CV-4014-SLB, 2013 WL 832354, at *8

(N.D. Ala. Feb. 28, 2013) (internal quotation marks and citations omitted).

Plaintiff does state the elements of the claim, alleging there was a duty, breach, causation, and damages. (Doc. 18 ¶¶ 120-26.) Plaintiff also alleges that defendants "knew or should have known that its employees, agents, claim handling personnel and retained experts and/or investigators were not properly or adequately trained, and/or supervised, to perform the job duties for which they were hired." (*Id*. ¶ 122). However, she fails to identify any "prior similar acts of wrongdoing sufficient to establish that the employer knew or should have known that the employee, due to his incompetency, was prone to such wrongdoing." *Agee*, 2013 WL 832354 at *8. Actually, Count VI fails to put forth a single fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").[5] Because plaintiff has failed to allege sufficient facts in support of her claim, Count VI is due to be dismissed. The court will grant leave for plaintiff to amend her complaint to include such facts.

### IV. Count VII: Invasion of Privacy, False Light, Infliction of Emotional Distress

Defendants argue that plaintiff's claims in Count VII are not facially plausible because she gives no information about the alleged intrusion on her privacy. (Doc. 19-1 at 22-24.) Also, they observe that when one makes a claim for insurance benefits, the claimant's

---

[5]Compare the language in Count VI, (doc. 18 ¶¶ 120-126), with the language condemned in *Iqbal*, 556 U.S. at 680-681: "Respondent pleads that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest' . . . that Ashcroft was the 'principal architect' of this invidious policy . . . and that Mueller was 'instrumental' in adopting and executing it . . . . These bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' . . . .") (internal citations omitted).

expectation of privacy is somewhat diminished. (*Id*. at 23.) Plaintiff responds that defendants have relied "upon a[n] 'overly technical' interpretation of Rule 12(b)(6)," and that defendants "have confused the requirements of Rule 9 with the requirements of Rule 12." (Doc. 21 ¶¶ 24-25.)

Alabama courts define the tort of invasion of privacy as "the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Nipper v. Variety Wholesalers, Inc*., 638 So. 2d 778, 781 (Ala. 1994). There are four distinct wrongs in an invasion of privacy claim: "(1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some elements of the plaintiff's personality for a commercial use." *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997). "[O]ne may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or by an invasion of one's 'emotional sanctum.'" *Carter v. Innisfree Hotel, Inc*., 661 So. 2d 1174, 1178 (Ala. 1995). When people file insurance claims, however, they "must expect reasonable inquiry and [i]nvestigation to be made of [their] claim[s] and to this extent [their] interest in privacy is circumscribed." *Ala. Elec. Co-op., Inc. v. Partridge*, 225 So. 2d 848, 851 (1969) (quoting *Forster v. Manchester*, 189 A.2d 147, 150 (Pa. 1963)).

Count VII asks the court and opposing counsel to wade through "each and every material fact and allegation in paragraphs 1-126 above, as if set forth fully herein," (doc. 18

at 58), and find how those facts might satisfy the legal elements the Count recites. But none

of these facts, on their own or with the guiding hand of counsel, show how plaintiff was put

in a false light or how her privacy was invaded. (*See* doc. 18 ¶¶ 1-126.) Plaintiff has thus

failed to present a "short and plain statement of the claim showing that [she] is entitled to

relief" on Count VII, and the count is due to be dismissed.[6] *See* FED. R. CIV. P. 8(a)(2). The

court will grant plaintiff leave to amend her complaint to make the requisite showing.

## IV. CONCLUSION

For the reasons set out above, defendants' Motion to Dismiss is due to be granted with

regard to Count IV (intentional infliction of emotional distress), Count V's claim of

fraudulent investigation, Count VI (negligent hiring, training, and supervision), and Count

VII (invasion of privacy). Plaintiff will be granted leave to replead these claims and set forth

sufficient factual allegations to satisfy the relevant requirements of Rule 8(a)(2) or Rule 9(b).

Defendants' Motion to Dismiss is due to be denied with regard to Count V's fraudulent

inducement claim. An order in accordance will be entered contemporaneously with this

Memorandum Opinion.

**DONE** this 27th day of March, 2014.

Sharon Lovelace Blackburn
_____
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE

---

[6]Since plaintiff's claim of intentional infliction of emotional distress has already been
addressed in Count IV, there is no need to address it separately under Count VII.